EASTERN DIST.
*February*, 1837.

HODGE'S HEIRS *vs.* DURNFORD'S CURATOR.

HODGE'S HEIRS
*vs.*
DURNFORD'S
CURATOR.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH AND CITY OF
NEW-ORLEANS.

An interlocutory judgment of the Court of Probates, ordering a curator
to account, may be relieved against, on appeal from such final judgment
as may be rendered, and does not work an irreparable injury; it there-
fore cannot be appealed from.

This is an application for a *mandamus,* commanding the
judge of probates to grant an appeal from an interlocutory
judgment, ordering the curator of Durnford's estate to render
an account.

The plaintiffs allege, that David Hodge, their ancestor,
died in Louisiana, in 1791, leaving a very large estate,
consisting of real and personal property, and a will, by which
he bequeathed the whole of it to his brothers and sisters, and
their decendants in Scotland, and England, and constituted
Thomas Durnford, of New-Orleans, and others, testamentary
executors. Durnford, by appointment of the other executors,
took upon himself the administration of the succession, as
sole executor.

That after many and repeated applications through agents,
the plaintiffs, and those in whose rights they now appear,
succeeded in compelling the said executor to render an
account, which was defective and unsatisfactory, and many
exceptions filed thereto. They pray that said Durnford be
cited to answer, and pay over such sums as may be in his
hands on settlement, and that he deliver up all the books,
vouchers, &c. This suit was filed in 1823.

The defendant denied the capacity of the plaintiffs to sue
as heirs of Hodge, and pleaded prescription. It was further
denied that Durnford ever accepted the trust of executor, as
alleged, and that the succession of Hodge was opened under
a foreign government, and that this court was never seized,
and could not take cognizance of it.

63

EASTERN DIST.
February, 1837.

HODGE'S HEIRS
vs.
DURNFORD'S
CURATOR.

Durnford died while these proceedings were going on, and John M'Donough was appointed curator of his vacant estate. The judge of probates ordered that the curator should file an account of the administration of said Durnford, within a fortnight from the notification of this order.

The curator prayed an appeal from this order, which was refused by the judge.

*Grymes,* for the curator, moved for a rule to show cause why a *mandamus* should not issue, commanding the judge of probates to grant an appeal.

The judge gave as his reasons for refusing the appeal, " that all the points in controversy between the parties not being decreed, the judgment rendered, and from which the appeal is prayed, is merely interlocutory, and *cannot* be appealed from. *Code of Practice, 539.* It does not cause an irreparable injury, and the party can have the benefit of his exception to it on a final judgment.

*Grymes* and *Strawbridge,* supported the motion on the ground, that from the great lapse of time since Durnford undertook the executorship of Hodge's estate, it was impossible for his curator to make out and file an account ; that while the order stood, he was compelled to do it, or submit to imprisonment. In this respect the injury would be irreparable.

*D. Seghers,* on behalf of the judge in showing cause, maintained that the judgment intended to be appealed from, was not definitive. *Code of Practice, 539, 567.*

2. That it does not cause an irreparable injury to the party seeking to appeal. *Ibid. 566.*

3. The judgment is only interlocutory, and does not authorize an appeal. *Ibid. 538.*

*Martin, J.,* delivered the opinion of the court.

To a rule to show cause why a *mandamus* should not issue to the judge of the Court of Probates of the parish of New-Orleans, commanding him to allow an appeal in this

case, he answered, "that the judgment intended to be ap-
pealed from is not definitive.  *Code of Practice*, 539, 565.
That the judgment does not cause irreparable injury to the
party wishing to appeal it.  *Code of Practice*, 566.  That the
judgment is only interlocutory.  *Code of Practice*, 538.  The
whole more fully appearing by an annexed certified copy of
the judgment of the court, refusing the appeal." The judg-
ment appealed from, orders the curator to file into court
within a fortnight, an account of the administration of
Durnford, as the testamentary executor of plaintiffs' ancestor.

The defendant's counsel has contended that this is an
extreme case, Durnford having entered on the execution of
the will long before the cession of this country to the United
States; the succession of Hodge having never been opened
in any court of the territorial or state government; the,
executor having died several years ago, and his curator
being without the means of presenting the account required,
and being, consequently, liable to imprisonment, unless re-
lieved by this court. The succession of Durnford appears
to have been opened in the Court of Probates for the parish
of New-Orleans, and it is from the funds of that succession
that the plaintiffs seek compensation for the injury alleged
to have been done to them by the neglect of the executor to
account. It matters not, therefore, whether any court of
the late territory, or of this state, was ever seized of the
*testamentaria* of their ancestor.

The judgment is certainly an interlocutory one, from which
no appeal lies, unless it works an irreparable injury ; that is
to say, such an injury, which, on an appeal from the final
judgment in the cause, cannot be relieved against by this
court. We must presume that the Court of Probates will
be satisfied with such an account as the curator is able
to render under all the circumstances of this case. If,
on such an account being rendered, the court proceeds to
give an erroneous judgment, the path to redress is clear.
We are aware of the difficulty attending the rendering, con-
testing and settling long and intricate accounts of several
years standing, and of the utility of avoiding all those diffi-

EASTERN DIST. culties, when the rendition of such accounts cannot be
*February*, 1837. legally claimed.   But the case would be worse, if those who
TRAVERSO ET AL. are entitled to demand such accounts could be delayed by
*vs.* an appeal, especially in the western part of the state, until
ROW ET AL. their demands were fairly established in this court, and the
case returned to the lower court for the rendition of the
account.   The rule must, therefore, be discharged.